**SHAW PROJECT AREA COMMITTEE, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA COMMISSION ON HUMAN RIGHTS, Respondent.**

No. 83–1347.

District of Columbia Court of Appeals.

Submitted Jan. 3, 1985.

Decided Nov. 4, 1985.

Paris A. Artis, Hyattsville, Md., was on brief for petitioner.

Michele Giuliani, Asst. Corp. Counsel, Washington, D.C., with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for respondent.

Before NEBEKER, NEWMAN and BELSON, Associate Judges.

PER CURIAM:

Petitioner seeks review of a decision of the District of Columbia Commission on Human Rights. The Commission held that petitioner discriminated against its employee Joyce Chesnut on the basis of sex in violation of the District of Columbia Human Rights Act, D.C.Code §§ 1–2501 *et seq.* (1981),[1] by failing to award her payment for accrued annual leave.[2] At issue

---

1. D.C.Code § 1–2512(a) provides in relevant part:

    (a) *General.*—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation, of any individual:

    (1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee....

2. Ms. Chesnut filed her complaint with the Office of Human Rights on November 9, 1978. The period for which Ms. Chesnut requested credit for accrued annual leave was petitioner's fiscal year 1977: October 1, 1976, through Sep-

is the Commission's determination that petitioner's reason for denying Ms. Chesnut the requested payment was a pretext for discrimination. We conclude that this determination is not supported by substantial evidence of record, considered as a whole.[3] Accordingly, we reverse.

Petitioner, a private employer funded solely by the Department of Housing and Community Development (DHCD), assesses the housing needs and concerns of residents of the Shaw area and disseminates information to citizens in the community concerning housing programs. During the time period relevant to this case—October 1976 through October 1978—petitioner employed seven employees, one male and six female. Among them were three community organizers: Mildred Edwards, Albert Paul, and Joyce Chesnut (complainant). Each of these community organizers accumulated 1 day of annual leave for each completed month of service, that is 12 days, or 96 hours, per year. In addition, each employee was eligible to receive compensatory time for working extra hours, subject to the limitations set forth in petitioner's personnel and policy procedure manual.

In February 1978, a new Board of Directors was elected to govern petitioner. The new Chairperson, Charles Richardson, directed Carol Caldwell, the new Treasurer, to construct annual leave records for all employees. While endeavoring to construct leave records, Ms. Caldwell consulted a book containing employee leave records for the 1977 fiscal year (October 1, 1976 through September 30, 1977), but that book disappeared before she had an opportunity to compute or record the leave balances for each employee during that period. Consequently, there were no written records of the annual leave balances of petitioner's employees for the 1977 fiscal year.

Between April and June, 1978, each of the three community organizers—complainant, Ms. Edwards, and Mr. Paul—requested credit for annual leave accrued during the 1977 fiscal year. In June 1978, time sheets were prepared for, and signed by, each of them, crediting Ms. Edwards with 96 hours of annual leave accrued during the 1977 fiscal year, Mr. Paul with 64 hours, and complainant with none.

By a letter dated June 16, 1978, Mr. Paul resigned from petitioner's employment effective July 14, 1978. He subsequently wrote a letter to DHCD to express his concerns that petitioner was having a negative impact on the community. After petitioner's Board of Directors became aware of Mr. Paul's letter of criticism to DHCD, petitioner sent him a letter stating that, because there were no records of his accrued annual leave for the 1977 contract year, petitioner would not compensate him for annual leave time accrued during that time period pending a personnel committee meeting. The Personnel Committee later acted favorably on Mr. Paul's request, and he was paid for his annual leave accrued during the 1977 fiscal year.

By a letter dated September 4, 1978, complainant gave 2 weeks notice of her

tember 30, 1977. This period antedates the effective date of the Human Rights Act, December 13, 1977. Section 318(b) of the Act provides, however, that "The procedures and remedies set forth in this act are to apply to any ... administrative proceeding ... instituted after the effective date of this act as a result of any act, omission or violation of Regulation No. 73–22 ... which act, omission or violation occurred prior to the effective date of this act." 24 D.C.R. 2830, 2870 (Oct. 14, 1977). The language of § 11.1(a) of Regulation No. 73–22, 20 D.C.R. 345, 351 (Nov. 17, 1973), prohibiting discriminatory practices in employment, is identical to the language of D.C.Code § 1–2512(a), *supra* note 1, and encompasses the allegedly discriminatory practices in which Ms. Chesnut asserts that petitioner engaged. Thus, Ms. Chesnut's claim is governed by the Human Rights Act.

3. The record before us does not include a transcript of the hearing conducted by the Commission in this case. It is, of course, petitioner's duty to present this court with a record sufficient to show affirmatively that the decision we review is erroneous. *See Cobb v. Standard Drug Co., Inc.*, 453 A.2d 110, 111 (D.C.1982). We are satisfied, however, that the record we have is adequate for us to proceed with our review function.

resignation. In this letter she stated she was resigning because she felt there was "gross discrimination, constant intimidation, cronyism, withholding of my salary and annual leave, while other employees receive theirs and undermining me as an employee of the Shaw PAC." By a second letter dated October 5, 1978, complainant advised Lorenzo Jacobs, Director of DHCD, that petitioner was engaging in unethical practices which included discrimination and the withholding of pay checks and leave; that she was resigning to avoid retaliatory measures by petitioner; and that she planned to file appropriate grievances with local agencies.

Petitioner held several meetings during October 1978, to discuss the issues raised in complainant's letters, including the matter of annual leave accrued during the 1977 fiscal year. At a Personnel Committee meeting on October 10, 1978, Chairperson Milton Nicholas stated that "in September of last year, the previous Executive Director, Bill Street, had affirmed that during the previous (year) contract every other employee except himself and Millie Edwards had taken Annual Leave." It was noted that on September 7, the Committee had approved payment to Mr. Paul for annual leave accrued during the 1977 fiscal year. It was then moved and seconded that complainant be paid for 10 days annual leave during the 1977 fiscal year. The motion carried.

On October 25, 1978, the Personnel Committee again met and discussed complainant's request for annual leave credit. The minutes of that meeting state that Mr. Nicholas "re-iterated the statement of the former Executive Director, Mr. Street, affirming that Ms. Chesnut had, in fact, taken all leave due her from the previous year."

On October 26, 1978, Mr. Nicholas reported to the Board that the Personnel Committee's recommendation was that complainant be paid for 10 days accrued

prior to October 1, 1977. After it was moved and seconded that this recommendation be approved, there was further discussion and a review of complainant's October 5 letter of complaint to the director of DHCD. Mr. Nicholas then advised the board that "Mr. William Street, the PAC Executive Director during the period in question, has confirmed that Ms. Chesnut did, in fact, use her Annual Leave." The minutes of the Board's meeting state that "[s]everal Board Members present recalled the same." A majority of the Board then agreed that Ms. Chesnut was not due any annual leave, and the motion to adopt the Personnel Committee's recommendation in favor of paying her for annual leave failed.

On November 9, 1978, Ms. Chesnut filed a complaint with the Office of Human Rights alleging that petitioner discriminated against her on the basis of sex by not awarding her payment, as it had Mr. Paul, for accrued annual leave. After conducting an evidentiary hearing, the Commission ruled in favor of complainant and awarded her damages.

■ On reviewing a case of employment discrimination where disparate treatment is alleged this court generally adopts the approach of the Supreme Court with respect to allocation of burdens and order of presentation of proof for a claim of disparate treatment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). *Miller v. American Coalition of Citizens with Disabilities,* 485 A.2d 186, 189 (D.C.1984); *RAP, Inc. v. District of Columbia Commission on Human Rights,* 485 A.2d 173, 176 (D.C.1984). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981). The proof proceeds by alternate shiftings of intermediate evidentiary burdens.[4]

4. The Supreme Court has cautioned that this     method "was never intended to be rigid, mecha-

The employee bears the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. at 1093; *Furnco Construction Co. v. Waters*, 438 U.S. 567, 576, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). This burden is not onerous. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. Establishment of the prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against the employee. *U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *see Furnco*, 438 U.S. at 576, 577, 579–80, 98 S.Ct. 2949, 2950–51.

The burden of production then shifts to the employer to rebut the presumption of discrimination by articulating some legitimate, nondiscriminatory reason for the employment action at issue. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Board of Trustees v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978) (per curiam); *Furnco*, 438 U.S. at 577–78, 98 S.Ct. at 2949–50; *McDonnell*, 411 U.S. at 802, 93 S.Ct. at 1824. The employer need not prove by a preponderance of the evidence that it was actually motivated by the proffered justification. *Burdine*, 450 U.S. at 254, 259–60, 101 S.Ct. at 1094, 1096–97; *Sweeney*, 439 U.S. at 25, 99 S.Ct. at 295. Rather, it may satisfy its burden by producing admissible evidence from which the trier of fact could rationally conclude that the employment action had not been motivated by discriminatory animus. *Burdine*,

450 U.S. at 254–55, 257, 101 S.Ct. at 1094, 1095.

Finally, the employee must be afforded a fair opportunity to prove by a preponderance of the evidence that the employer's stated reason for its action was not its true reason but was in fact merely a pretext for discrimination. *Burdine*, 450 U.S. at 253, 255–56, 101 S.Ct. at 1093, 1094–95; *Furnco*, 438 U.S. at 578, 98 S.Ct. at 2950; *McDonnell*, 411 U.S. at 804, 807, 93 S.Ct. at 1825, 1826. This burden merges with the ultimate burden of persuasion on the question of intentional discrimination. *Burdine*, 450 U.S. at 256, 101 S.Ct. 1095. The employee may meet this burden "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1095, *quoted in Aikens*, 103 S.Ct. at 1482.

Within this framework, the Commission conducted its analysis of complainant's claim. The Commission first concluded that she established a prima facie case of discrimination. It determined that the relevant class of similarly situated employees consisted of two individuals: complainant and Mr. Paul.[5] A presumption of discrimination was created by the fact that petitioner refused to pay complainant for annual leave accrued during the 1977 fiscal year after the Board of Directors learned about her letter of criticism to its funding agency, but awarded pay to Mr. Paul for such leave despite his critical letter.

The Commission also concluded that petitioner did meet its burden of articulating a legitimate, nondiscriminatory reason for

---

nized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978).

5. The Commission excluded Ms. Edwards, the third community organizer, because when the Chairperson of petitioner's Personnel Committee asked Mr. Street, petitioner's former Di-

rector, about the annual leave matter, Mr. Street specifically recalled that Ms. Edwards did not take annual leave during the 1977 fiscal year. Petitioner credited Ms. Edwards with 96 hours of annual leave, and, as the Commission noted, due to petitioner's reliance on Mr. Street's statement, petitioner "did not question or investigate Ms. Edward's leave balance as it did those of Mr. Paul and [Ms. Chesnut]."

denying complainant's request for annual leave credit. The Commission further determined, however, that it was unable to credit petitioner's reason. According to the Commission, petitioner asserted that the Board's decision to credit Mr. Paul's leave balance was based on its collective memory that Mr. Paul had worked long hours during contract year 1977, and that the decision to deny complainant credit for leave accrued during the same period was based on the Board's collective memory that she did not work long hours, and further that she could not have worked long hours because she had children. The Commission observed, however, that, according to the testimony of petitioner's own witnesses, the Board did not directly review or approve leave requests and thus would not know what type of leave an employee was using or the fact of its use. The Commission concluded that the nondiscriminatory reason articulated by the Board for denying complainant's request for leave was unworthy of credence and was a "mere pretext" for its disparate treatment of complainant. Therefore, the Commission found that complainant had successfully carried her burden of proving that petitioner had unlawfully discriminated against her on the basis of sex.

This court's statutory review function is "to determine whether the Commission's findings of fact are supported by substantial evidence in the record considered as a whole and whether its conclusions of law flow rationally from those findings." *Greater Washington Business Center v. District of Columbia Commission on Human Rights*, 454 A.2d 1333, 1337 (D.C. 1982), and cases cited therein; D.C.Code

§ 1–1510(a)(3)(E)(1981). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greater Washington Business Center*, 454 A.2d at 1338 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938) ). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951), quoted in *In re Dwyer*, 399 A.2d 1, 11 (D.C.1979). Thus, "a fact which seems solid and substantial when viewed in isolation may in fact become evanescent or 'a mere scintilla' when seen in the full record." *Spevak v. District of Columbia Alcoholic Beverage Control Board*, 407 A.2d 549, 553 n. 6 (D.C.1979).

■ We assume solely for the sake of argument that, as the Commission concluded, the relevant class of similarly situated employees comprises complainant and Mr. Paul but not Ms. Edwards.[6] We focus our inquiry instead upon the Commission's conclusion that petitioner's reason for denying complainant pay for accumulated annual leave was pretextual. Viewing the record as a whole, we cannot say that this conclusion is supported by substantial evidence.

Petitioner introduced as evidence before the Commission certain time sheets dated June 1978, which indicate that Mr. Paul was credited with 64 hours of annual leave accrued in fiscal year 1977 and that complainant was credited with no such leave. The time sheets, in essence, reconstructed

---

**6.** There is substantial support in the record for fashioning the class of comparably situated employees to include not only complainant and Mr. Paul, but Ms. Edwards as well. All three were employed as community organizers by petitioner. The annual leave records for all three of them for fiscal year 1977 were lost. All requested credit for annual leave for that year. Leave records were reconstructed for all of them. All were credited by the Board with the amount of leave indicated on the reconstructed leave records.

Obviously, if Ms. Edwards were a member of the class, the Commission would be hard put to infer sex discrimination on the basis of disparate treatment. She received more pay for annual leave than did Mr. Paul.

In light of our holding in this case, we need not decide which grouping of employees—one including Ms. Edwards or one excluding her—is appropriate for purposes of analysis of alleged discrimination.

leave records, were signed by each employee, respectively. Preparation and signature of these time sheets antedated their resignations, their letters of criticism and consideration by the Board of their respective requests for payment for accumulated annual leave. After the Board considered their requests, it awarded them payment for precisely the number of hours of accumulated annual leave indicated on the time sheets: 64 for Mr. Paul, 0 for complainant. In other words, with respect to credit for accumulated annual leave, complainant and Mr. Paul were in the same position relative to one another after consideration by the Board as they were before.

The Commission described the time sheets in its findings of fact but neglected to acknowledge their significance in its conclusions of law. Rather, the Commission relied entirely on its observation that the Board had only indirect knowledge of an employee's leave status. The content of the time sheets vitiates complainant's position regarding pretext. Complainant showed neither that preparation of the time sheets was motivated by a discriminatory reason nor that they are unworthy of credence. Accordingly, she manifestly failed to satisfy her burden of proving that the calculations of accumulated annual leave contained in the time sheets, corroborated by Mr. Street's statement concerning her use of leave and the Board members' consistent recollection, were a pretextual, as opposed to genuine, reason for denying her credit for annual leave.

In view of the foregoing, we hold that the evidence presented to the Commission lacked the requisite substantiality to justify its decision. Complainant failed, on this record, to sustain her burden of persuasion on pretext. Furthermore, the record bears not a shred of direct evidence that petitioner discriminated intentionally on the basis of sex. We therefore reverse the Commission's ruling that petitioner violated the Human Rights Act.

*Reversed.*