Deborah **PERKINS,** Plaintiff,

v.

**DISTRICT OF COLUMBIA,** Defendant.

**Civ. A. No. 90–2081.**

United States District Court, District of Columbia.

July 29, 1991.

Janet Rose Cooper, Washington, D.C., for plaintiff.

Nancy S. Schultz, Corp. Counsel, Washington, D.C., for defendant.

1. 42 U.S.C.A. section 2000e–2(a) provides in relevant part:
(a) It shall be an unlawful employment practice for an employer—
(1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

2. D.C.Code section 1–2512(a) provides in relevant part:
(a) *General.*—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race, color, religion,

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This case arises under Title VII of the Civil Rights Act of 1964 as amended by the Equal Employment Opportunity Act, 42 U.S.C.A. section 2000e, *et seq.* (West 1981 & 1990 Supp.),[1] and the District of Columbia Human Rights Act, D.C.Code sections 1–2501 *et seq.* (1981).[2] Plaintiff Deborah Perkins, a black female, works as an Administrative Aide (typist), DS–6, for the Bureau of Parking Services of the District of Columbia Department of Public Works. Perkins alleges that she is a victim of discrimination on the basis of her race because she was not selected to fill the position of Parking Security Specialist, DS–7/9, in 1981. The selectee in 1981 was a white female. Perkins also alleges that she was a victim of discrimination on the basis of her sex because she was not selected to fill the position of Parking Operations Specialist, DS–7/9/11, in May 1986. The selectee in 1986 was a black male. In addition, plaintiff alleges that in 1978 she was the victim of sex discrimination in connection with her job reassignment from the Office of Youth Advocacy to the Department of Transportation.

This matter is presently before the Court on defendant's Motion for Summary Judgment. After a thorough review of the pleadings, exhibits, and the entire record herein, the Court concludes that defendant's motion should be granted in part and denied in part on the terms set forth below.

## I. BACKGROUND

Prior to December 1978, Perkins and Harold Smith ("Smith"), a black male, were

national origin, sex, age, marital status, personal appearance, sexual orientation, family responsibilities, physical handicap, matriculation, or political affiliation, of any individual:
(1) To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee[.]

employed by the D.C. Office of Youth Advocacy. Perkins held a position as a Special Assistant, DS–9, while Smith served as a Program Assistant, GS–7. At that time, the Office of Youth Advocacy experienced a reduction in force ("RIF") and both Perkins and Smith were reassigned to the Department of Transportation ("DOT"), which in 1983 became the Department of Public Works ("DPW"). Perkins was placed in a Secretary (typing), GS–5, position. Although she was placed in a lower grade, she retained her prior salary. Smith was placed in the position of Booter Foreman, WS–05, and received a salary increase.

On July 26, 1981, Perkins was reassigned to an Administrative Aide (typist), DS–6, position, which she currently holds. From February 25, 1985 to July 14, 1986, Perkins was detailed to perform an "Unclassified Set of Duties." During this detail, Perkins served as a parking operations specialist trainee.

In 1978, Katherine Kuzemka, a white female, commenced employment with the D.C. Department of Transportation as a Supervisory Parking Control Aide, GS–6. Kuzemka was promoted to Parking Security Specialist, DS–9, effective June 3, 1981, and to Parking Security Specialist, DS–11, effective January 6, 1985. During 1984, Kuzemka was detailed to perform an "Unclassified Set of Duties" which comprised those duties which would be performed by a trainee for Parking Operations Specialist position. On February 15, 1987, Kuzemka was reassigned to a position as a Parking Operations Specialist, DS–11.

In May 1986, the position of Parking Operations Specialist, DS–7/9/11, was posted for competition. Both Perkins and Smith applied for the vacancy. The Office of Personnel notified Perkins that she was among those qualified to apply for the position, and her name was submitted along with four other eligibles on the Selection Certificate. Smith was selected for the position.

Perkins filed a charge of discrimination with the D.C. Office of Human Rights on December 3, 1986. The Office of Human Rights issued an initial decision finding no probable cause on February 4, 1987; Perkins' appeal of this decision was denied on March 24, 1989. On April 13, 1989, Perkins filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued its final determination and a right to sue notice on May 31, 1990. On August 27, 1990, plaintiff filed the instant action.

## II. ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Since defendant, the party moving for summary judgment, has the burden of proving the lack of any genuine issue of fact, the Court must view the available facts in the light most favorable to plaintiff. *Minihan v. American Pharmaceutical Ass'n,* 812 F.2d 726, 727 (D.C.Cir.1987). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

To withstand a motion for summary judgment, the non-moving party must demonstrate that there exists a genuine dispute as to one or more facts material to the outcome of the litigation. The facts which are material to the outcome of a case are those that the governing substantive law recognize as relevant. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. Since this case involves claims of disparate treatment on the bases of race and sex, the material facts are those which speak to the elements of the analytical framework laid down in

Title VII by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805, 93 S.Ct. 1817, 1824–1825, 36 L.Ed.2d 668 (1973), and its progeny.[3] It is necessary for plaintiff to indicate that there is some evidence to demonstrate that her race and gender played a role in the challenged agency actions.

First, plaintiff must prove a prima facie case of discrimination by a preponderance of the evidence. Proof of a *prima facie* case gives rise to a rebuttable presumption or inference of discrimination. *U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 714, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983). In order to establish a prima facie case, Perkins must show (1) that she belongs to a class of persons protected by Title VII (2) that she applied for and was qualified for the promotion for which she was not selected; (3) that despite her qualifications, she was rejected; and (4) that the plaintiff was rejected at the same time that another employee of similar qualifications who was not a member of plaintiff's group was selected. *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981).

Second, if plaintiff succeeds in proving this prima facie case, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. The employer's burden is not one of persuasion, but one of production. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981).

Third, if defendant meets this burden, plaintiff is then granted an opportunity to prove by a preponderance of the evidence that the facially legitimate reason offered by the defendant was not its true reason, but rather a pretext for discrimination. *Id.* at 252–253, 101 S.Ct. at 1093–94. "Within this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Martin Trigona v. Univ. of District of Columbia,* 668 F.Supp. 682, 692 (D.D.C.1987).

Perkins alleges that she is a victim of discrimination on the basis of her race because in 1981 she was not selected to fill the position of Parking Security Specialist, DS–7/9. The selectee in 1981 was Kuzemka, a white female. Perkins also alleges that in May 1986 she was a victim of sex discrimination because she was not selected to fill the position of Parking Operations Specialist, DS–7/9/11. The selectee in 1986 was Smith, a black male. In addition, Perkins alleges that Smith received favored treatment on the basis of his sex at the time they were members of a RIF within the Office of Youth Advocacy and accepted jobs with the Department of Transportation in 1978.

■ In the motion for summary judgment, defendant presents two arguments. First, defendant contends that Perkins did not file a timely charge of discrimination with respect to alleged unlawful employment practices which occurred prior to 1986. The Court agrees.

As a prerequisite to filing an employment discrimination action under Title VII, an aggrieved employee must timely file a charge with the EEOC. *Love v. Pullman Co.,* 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972). The statute of limitations for filing a charge with the EEOC provides in part:

> A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge ... shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such

---

**3.** The *McDonnell Douglas* approach has been adopted by Courts reviewing claims of employment discrimination brought pursuant to the District of Columbia Human Rights Act. *See, e.g., Shaw Project v. D.C. Com'n on Human Rights,* 500 A.2d 251, 253 (D.C.App.1985).

practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier....

42 U.S.C.A. section 2000e–5(e) (West 1981 & 1990 Supp.). If the alleged discrimination occurred in a deferral state,[4] such as the District of Columbia,[5] no charge may be filed with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." 42 U.S.C.A. section 2000e–5(c) (West 1981 & 1990 Supp.).

Perkins did not contact the D.C. Office of Human Rights until June 1986, five years after her failure to be promoted in 1981 and eight years after the alleged RIF-related sex discrimination occurred. She does not contend that she was unaware of the above-mentioned time limits or that circumstances prevented her from timely presenting her claims. Although the charge concerning defendant's refusal to promote in May 1986 was timely filed in December 1986, the claims with respect to the 1978 RIF and reemployment by DOT, the 1981 promotion and other pre–1985 actions were not filed within the requisite 300 days. The Court concludes, therefore, that Perkins' allegations respecting race discrimination and sex discrimination arising out of the RIF and reemployment by DOT are time barred under Title VII.

■ Defendant's second argument in support of its motion for summary judgment is that Perkins has not established a prima facie case of sex discrimination with respect to the failure to promote in 1986. As stated previously, Perkins has the initial burden under Title VII to make out a prima facie case of discrimination by a preponderance of the evidence. Under the *McDon-*

*nell Douglas* test, Perkins must show the following four elements: (1) that she belongs to a class of persons protected by Title VII; (2) that she applied for and was qualified for the promotion for which she was not selected; (3) that despite her qualifications, she was rejected; and (4) that the plaintiff was rejected at the same time that another employee of similar qualifications who was not a member of plaintiff's group was selected. *McDonnell Douglas v. Green,* 411 U.S. at 802, 93 S.Ct. at 1824; *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981). The parties agree that Perkins, a black female, applied for the Parking Operations Specialist position in May 1986 and was rejected in favor of Smith, a black male. Thus, it is undisputed that Perkins has demonstrated that she is a member of a protected group, that she applied for the vacant position, that she was rejected while another employee who was not a member of her group was selected.

The only issue before the Court concerning whether Perkins has established a prima facie case of sex discrimination is whether she was qualified for the promotion for which she was not selected. Defendant insists that plaintiff was not qualified. This position is in direct contradiction to the fact that defendant's personnel office notified Perkins that she was among those qualified to apply for the position. Additionally, Perkins' name was submitted on the Selection Certificate along with four other eligibles. Defendant attempts to make light of these facts by asserting that although Perkins had "some qualifications" for the position, she was not as qualified as Smith. This argument must be rejected since Title VII does not require a plaintiff to prove that she was the best qualified candidate for the position. To establish a prima facie case, Perkins need only show that she was among those qualified. *See Mitchell v. Baldrige,* 759 F.2d 80, 84–85 (D.C.Cir.1985). This she has

---

**4.** A deferral state is one "which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice." 42 U.S.C.A. section 2000e–5(c) (West 1981 & 1990 Supp.).

**5.** *See* 29 C.F.R. 1601.74 (1990).

done. Accordingly, the Court concludes that Perkins has satisfactorily demonstrated a prima facie case of sex discrimination in connection with the 1986 nonpromotion.

In line with the foregoing, it is hereby

ORDERED that defendant's motion for summary judgment is granted in part and denied in part; and it is further

ORDERED that judgment is entered in favor of defendant Washington Metropolitan Area Transit Authority with respect to plaintiff's claims of race and sex discrimination relating to the 1981 promotion and the 1978 reduction in force and reemployment by the Department of Transportation.