**Reza MIANEGAZ, Plaintiff,**

v.

**HYATT CORPORATION, Defendant.**

**No. CIV.A.02–0787(RMU).**

United States District Court,
District of Columbia.

May 24, 2004.

Sol Zalel Rosen, Washington, DC, for Plaintiff.

Mark D. Laponsky, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

DISMISSING THE PLAINTIFF'S ADEA TERMINATION CLAIM AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE REMAINING CLAIMS

URBINA, District Judge.

### I. INTRODUCTION

This case comes before the court on the defendant's motion for summary judgment. The plaintiff alleges that his former employer, the defendant, unlawfully discriminated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.,* and the District of Columbia Human Rights Act ("DCHRA"), D.C.Code §§ 2–1401 *et seq.* The court dismisses the plaintiff's ADEA termination claim because he has failed to exhaust the ADEA's prescribed administrative remedies for that claim. As to the plaintiff's remaining claims, the court grants the defendant's motion for summary judgment because the plaintiff has failed to establish a prima facie case of age discrimination under either the ADEA or the DCHRA.

### II. BACKGROUND

#### A. Factual Background

The plaintiff began working for the defendant as a butcher in 1981. Def.'s Statement of Undisputed Facts ("Def.'s Statement") ¶¶ 1–4; Pl.'s Statement of Disputed Facts ("Pl.'s Statement") ¶ 4. In January 2000, one of the plaintiff's supervisors reported that the plaintiff directed inappropriate and abusive language at another employee. Def.'s Statement ¶ 6; *see generally* Pl.'s Statement. After this incident, the plaintiff's supervisors warned him that any repeated conduct of this nature could result in his termination. Def.'s Statement ¶ 7; *see generally* Pl.'s Statement.

A few months later, in April 2000, a supervisor reported that the plaintiff confronted and threatened him after once again directing inappropriate and abusive language at another employee. Def.'s Statement ¶¶ 8–9; *see generally* Pl.'s Statement. As a result of this second transgression, the defendant suspended the plaintiff for five days and required him to attend and provide documentation of anger-management counseling. Def.'s Statement ¶¶ 10–11; *see generally* Pl.'s Statement.

Nearly a year later, in March 2001, another supervisor reported that the plaintiff had, yet again, used inappropriate and abusive language in the workplace. Def.'s Statement ¶ 15; *see generally* Pl.'s Statement. Consequently, the defendant suspended the plaintiff for ten days, again ordering him to attend and document his enrollment in anger-management counseling. Def.'s Statement ¶¶ 16–17; *see generally* Pl.'s Statement. The plaintiff refused to attend the defendant's prescribed an-

ger-management counseling. Mussad Decl. ¶¶ 6–7 & Attachs. 3–4, 6–7.

Due to his suspensions, on March 22, 2001, the then 58–year–old plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging that the defendant discriminated against him on the basis of his age. Def.'s Statement ¶ 39; Pl.'s Dep. Tr. ("Pl.'s Dep.") Ex. 3. Specifically, he claimed that the defendant had not suspended similarly situated younger employees for comparable conduct. Def.'s Statement ¶ 41; Pl.'s Dep. Ex. 3.

On November 2001, while his EEOC complaint was pending, the plaintiff reported that he injured his back while lifting a box of meat at work. Def.'s Statement ¶ 20; Pl.'s Statement ¶ 4. As a result of his alleged injury, the plaintiff discontinued work, presented the defendant with a doctor's statement restricting his employment activities, and filed for workers' compensation. Def.'s Statement ¶ 22; Pl.'s Statement ¶ 4.

Thereafter, in an effort to verify the legitimacy of the plaintiff's reported injury and inability to work, the workers' compensation insurance provider had the plaintiff submit to an independent medical evaluation and assigned private investigators to conduct surveillance of the plaintiff. Def.'s Statement ¶ 23; see generally Pl.'s Statement. In January 2002, the defendant received a videotape from the insurance provider that contained footage of the plaintiff repeatedly lifting luggage. Def.'s Statement ¶ 24; see generally Pl.'s Statement. The defendant also received a copy of the independent medical evaluation, which determined that the plaintiff's conduct on the videotape was inconsistent with his reported condition and that the plaintiff could work without restriction. Def.'s Statement ¶¶ 25–31; see generally Pl.'s Statement. After reviewing the vid-

eotape and the medical evaluation, the defendant's general manager, in conjunction with the recommendation of the defendant's director of human resources, terminated the plaintiff for "misrepresent[ing] his ability to work after allegedly suffering an on-the-job injury." Def.'s Statement ¶¶ 33–34, 37; see generally Pl.'s Statement.

### B. Procedural History

On March 29, 2002, the EEOC issued the plaintiff a "Notice of Right to Sue" at the request of his counsel. Am. Compl. at 2; Pl.'s Dep. Ex. E. On April 24, 2002, the plaintiff initiated this suit against the defendant, alleging that the defendant violated the ADEA by suspending and later terminating the plaintiff on account of his age. Compl. ¶ 2; Am. Compl. at 1–2. On May 12, 2003, pursuant to the parties' stipulation, the plaintiff amended his complaint, adding an unlawful-termination claim under the DCHRA. Am. Compl. at 3–4. After receiving the plaintiff's consent, the defendant late-filed an answer to the amended complaint, advancing, *inter alia,* the affirmative defense of failure to exhaust administrative remedies with regard to the plaintiff's ADEA termination claim. Answer to Am. Compl. at 5. On November 3, 2003, the defendant filed its motion for summary judgment. The court now addresses that motion.

### III. ANALYSIS

### A. The Court Dismisses the Plaintiff's ADEA Termination Claim

#### 1. Legal Standard for Exhaustion of Administrative Remedies Under the ADEA

The purpose of the ADEA is to "promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and work-

ers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). Toward that end, the ADEA gives an individual who is at least 40 years old the right to seek relief against his employer if the employer has taken some adverse employment action against him on the basis of age rather than ability. *Id.* §§ 623, 631(a).

Before filing suit under the ADEA, a putative plaintiff must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident. *Id.* § 626(d)(1); *see also Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C.Cir.1998) (stating that "[b]efore suing under the ADEA[,] ... an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC"). The "charge" requirement mandates the filing of a written statement identifying the potential defendant and generally describing the alleged discriminatory incident. H.R.Rep. No. 95–950, at 12 (1978) (conference report). According to the D.C. Circuit,

> [a] vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace. Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge. Naturally every detail of the eventual complaint need not be presaged in the EEOC filing, but the substance of ... [the] claim ... must fall within the scope of the administrative investigation that can be reasonably expected to follow the charge of discrimination.

*Marshall v. Fed. Express Corp.*, 130 F.3d 1095, 1098 (D.C.Cir.1997) (internal citations and quotations omitted).

■ Dismissal results when a plaintiff fails to exhaust administrative remedies. *See Rann v. Chao*, 346 F.3d 192, 194–95 (D.C.Cir.2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies). While it remains unclear whether a failure to exhaust administrative remedies is jurisdictional, "nothing turns on the characterization" of such a dismissal, and the court need not "explore the matter [any] further." *Id.*; *see also Stewart v. Ashcroft*, 352 F.3d 422, 425–26 (D.C.Cir. 2003) (declining to address whether exhaustion qualifies as a jurisdictional requirement and affirming the district court's dismissal of the discrimination claim for failure to exhaust administrative remedies).

## 2. The Plaintiff's Failure to Exhaust Administrative Remedies Bars His ADEA Termination Claim

■ The plaintiff's termination claim fails to meet the ADEA's exhaustion requirements simply because his EEOC complaint does not "fairly embrace" his termination. *Marshall*, 130 F.3d at 1098. In fact, the plaintiff's EEOC complaint refers only to his suspensions, making no mention of his termination. Pl.'s Dep. Ex. 3. Of course, it would be curious if not clairvoyant for his EEOC complaint to actually reference his termination, given the fact that he filed it some ten months before his eventual discharge. Def.'s Statement ¶ 2; *see generally* Pl.'s Statement.

In a case that presents circumstances parallel to those in the instant matter, the D.C. Circuit addressed the exhaustion requirements of the Americans with Disabilities Act ("ADA"). *Marshall*, 130 F.3d at 1096–98. In that case, an employee com-

plained to the EEOC that her employer violated the ADA by denying her the opportunity to apply for a different position. *Id.* at 1096. The employer subsequently terminated the employee and, as a result, the employee filed suit asserting a discriminatory-discharge claim against her employer. *Id.* at 1097. The D.C. Circuit held that the employee failed to exhaust administrative remedies because she neither amended her EEOC charge to include the discriminatory-discharge claim nor filed a separate charge related to her termination. *Id.* at 1098; *accord Johnson v. Quin Rivers Agency for Cmty. Action, Inc.,* 140 F.Supp.2d 657, 663 (E.D.Va.2001) (dismissing the plaintiff's discriminatory-discharge claim for failure to exhaust administrative remedies because her EEOC charge was "silent . . . with respect to any allegation that [the p]laintiff was discharged, or that such discharge was discriminatory").

Similarly, the plaintiff in the present case has failed to exhaust administrative remedies for his ADEA termination claim. *Marshall,* 130 F.3d at 1098; *accord Stewart,* 352 F.3d at 425–26; *Rann,* 346 F.3d at 194–95. Accordingly, the court dismisses that claim and moves on to address the plaintiff's remaining claims of unlawful suspension under the ADEA and unlawful termination under the DCHRA.

## B. The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Remaining Claims

A plaintiff pursuing claims under the ADEA or the DCHRA may demonstrate discrimination through either direct or circumstantial evidence. *Dunaway v. Int'l Bhd. of Teamsters,* 310 F.3d 758, 763 (D.C.Cir.2002). Here, the plaintiff neither establishes nor sufficiently alleges direct evidence of age discrimination, relying instead on circumstantial evidence. *See generally* Am. Compl.; Pl.'s Statement; Pl.'s

Opp'n. In resolving the defendant's summary-judgment motion, the court must therefore "apply the framework developed in the context of Title VII litigation[. T]hat is, where direct evidence of discriminatory intent is not available, a party may establish unlawful age discrimination by relying on the familiar burden-shifting scheme" known as the *McDonnell Douglas* framework. *Hall v. Giant Food, Inc.,* 175 F.3d 1074, 1077 (D.C.Cir.1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

Courts routinely apply the *McDonnell Douglas* framework to ADEA claims. *E.g., id.* at 1077 (applying the *McDonnell Douglas* framework to ADEA claims); *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 140–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (assuming that the *McDonnell Douglas* framework is fully applicable to ADEA actions); *Paquin v. Fed. Nat'l Mortgage Ass'n,* 119 F.3d 23, 26 (D.C.Cir.1997) (concluding that "[i]n ADEA cases we apply the familiar three-step burdenshifting [*McDonnell Douglas* ] framework"). This framework also applies to DCHRA discrimination claims. *Paquin,* 119 F.3d at 27 n. 1 (extending "the same analysis to . . . ADEA and DCHRA claims"); *Perkins v. District of Columbia,* 769 F.Supp. 11, 14 n. 3 (D.D.C.1991) (Penn, J.) (noting that the "*McDonnell Douglas* approach has been adopted by [c]ourts reviewing [DCHRA] claims of employment discrimination").

### 1. The *McDonnell Douglas* Framework

The Supreme Court has explained the *McDonnell Douglas* framework as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the bur-

den shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" .... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination .... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (internal citations omitted) (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817).

■ To establish a prima facie case of age discrimination, the plaintiff must show that: (1) he is a member of the ADEA's protected class of persons over forty years of age; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Hall,* 175 F.3d at 1077; *Paquin,* 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.,* 711 F.2d 339, 342 (D.C.Cir.1983)). "The burden of establishing a prima facie case of disparate treatment is not onerous," *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089, and because the *McDonnell Douglas* model of the prima facie case is not "rigid, mechanized, or ritualistic," its requirements can vary depending on the factual context. *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d

957 (1978)). If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against him. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089.

To rebut this presumption, the defendant must articulate a legitimate, non-discriminatory reason for its action. *Id.* The defendant, however, "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (articulating that the employer's burden is one of production, not persuasion). Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ If the defendant successfully presents a legitimate, non-discriminatory reason for its action, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappears, and the sole remaining issue is discrimination *vel non.*" *Lathram v. Snow,* 336 F.3d 1085, 1088 (D.C.Cir.2003) (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka,* 156 F.3d at 1290). The court must therefore consider whether a jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia,* 298 F.3d 989, 992–93 (D.C.Cir.2002) (quoting *Aka,* 156 F.3d at 1289). The plaintiff need not

present evidence in each of these categories in order to avoid summary judgment. *Aka,* 156 F.3d at 1289. Instead, the court should assess the plaintiff's challenge to the defendant's explanation in light of the total circumstances of the case. *Id.* at 1291.

### 2. Legal Standard for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that par-

ty's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 879–80 (D.C.Cir.1997), overturned on other grounds, 156 F.3d 1284 (D.C.Cir.1998) (en banc); *see also Johnson v. Digital Equip. Corp.,* 836 F.Supp. 14, 18 (D.D.C.1993).

### 3. The Plaintiff Has Failed to Establish a Prima Facie Case of Age Discrimination

As noted, the plaintiff must establish a prima facie case of age discrimination with respect to his ADEA claim of unlawful suspensions and his DCHRA termination claim. Because the same analytical framework applies to both ADEA and DCHRA claims, the court analyzes the plaintiff's remaining claims in tandem under the *McDonnell Douglas* approach. *See Paquin,* 119 F.3d at 27 n. 1 (concluding that "[b]ecause we apply the same analysis to [the plaintiff's] ADEA and DCHRA claims, we refer from this point on to his claim under the ADEA only").

To establish his prima facie case of age discrimination, the plaintiff's evidence must "create a reasonable inference that age . . . was a determining factor in the employment decision." *Cuddy v. Carmen,* 694 F.2d 853, 856–57 (D.C.Cir.1982). Specifically, the plaintiff must prove, *inter alia,* that he was performing his job well enough to meet the defendant's legitimate expectations, and was disadvantaged in favor of a similarly situated younger employee.[1] *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Hall,* 175 F.3d at 1077; *Paquin,* 119 F.3d at 26; *Coburn,* 711 F.2d at 342. This the plaintiff cannot do.[2]

■ Right out of the starting gate, the plaintiff fails to prove that he was performing his job well enough to meet his employer's legitimate expectations. Indeed, the record demonstrates that the plaintiff's job performance did not meet the defendant's legitimate expectations in several respects. To begin with, the defendant received several reports that the plaintiff directed inappropriate, profane, and abusive language at his coworkers. Mussad Decl. ¶¶ 4–7 & Attachs. 1–5. This sort of behavior violates the defendant's rules for employee conduct, which prohibit "intimidation or threats of any kind against guests, supervisors, or coworkers[, and] . . . using vulgarity or failing to be courteous at all times." Ballinger Decl. ¶ 4. In addition, the plaintiff refused to attend the defendant's prescribed anger-management counseling, even after the defendant warned him that his failure to do so could lead to his termination. Mussad Decl. ¶¶ 6–7 & Attachs. 3–4, 6–7. Adding insult to injury, the plaintiff filed an apparently fraudulent workers' compensation claim.[3]

1. As for the remaining elements of the prima facie case, it is undisputed that the plaintiff was in his late fifties at the time of his suspensions and termination, placing him well within the ADEA's protected class. 29 U.S.C. § 631(a). In addition, neither party contests that the suspensions and termination constitute adverse employment actions. *See Holbrook v. Reno,* 196 F.3d 255, 263 (D.C.Cir.1999) (determining that the plaintiff "easily" established that her employer subjected her to adverse employment action when the employer suspended her for five days); *see also Russell v. Bd. of Trustees of Univ. of Ill.,* 243 F.3d 336, 341–42 (7th Cir.2001) (concluding that a five-day suspension was an adverse employment action); *Biolchini v. General Elec. Co.,* 167 F.3d 1151, 1153 (7th Cir.1999) (holding that a one-week suspension constitutes an adverse employment action under the ADEA); *Roberts v. Roadway,* 149 F.3d 1098, 1104 (10th Cir.1998) (determining that "[a]ctions such as suspensions or terminations are by their very nature adverse").

2. The plaintiff seems to ask the court to review the propriety and fairness of the defendant's decisions to suspend and terminate the plaintiff, rather than to determine whether age played a role in those employment decisions. *See generally* Pl.'s Opp'n to Def.'s Mot. for Summ. J. The court, however, does not sit as a "super-personnel committee that reexamines an entity's business decisions." *Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)); *see also Forman v. Small,* 271 F.3d 285, 291 (D.C.Cir.2001) (stating that "[c]onsistent with the courts' reluctance to become involved in micromanagement of everyday employment decisions, the question before the court is limited to whether [the plaintiff] produced sufficient evidence of . . . discrimination, not whether he was treated fairly"). In other words, the plaintiff is not entitled to receive and the court is not equipped to make a determination as to whether the defendant treated the plaintiff fairly. *Id.* Instead, the court's inquiry is limited to whether the plaintiff has produced sufficient evidence of discrimination. *Id.*

3. In support of its position, the defendant points to a videotape of the plaintiff engaging in activities inconsistent with his stated workers' compensation condition. Ellin Decl. ¶ 5. The defendant also submits a medical report by a physician who conducted an independent physical examination of the plaintiff, reviewed the videotape, and found the plaintiff able to "work on a full unrestricted duty status." Mussad Decl. Attach. 8 (stating that the video-

*Id.* Attach. 8; Ellin Decl. ¶ 5. Such conduct also violates the defendant's rules for employee conduct, which proscribe dishonesty and the "[f]alsification of any employment records ... during employment." Ballinger Decl. ¶ 4. In a rather terse response, the plaintiff merely opines that these allegations are untrue, advancing no probative evidence that he performed his job well enough to meet the defendant's legitimate expectations.[4] *See generally* Pl.'s Statement; Pl's Opp'n. Finally, the plaintiff essentially concedes that he was not meeting the defendant's legitimate expectations. When asked why he believed that age motivated the defendant's employment decisions, the plaintiff stated in response: "That's the reason I felt it because I'm getting old," and that "this job is getting too much. I need help." Pl.'s Dep. at 74–75, 90.

■ Moreover, the plaintiff does not demonstrate that he was disadvantaged in favor of a similarly situated younger employee. *McGill v. Munoz,* 203 F.3d 843, 848 (D.C.Cir.2000); *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1514 (D.C.Cir.1995); *see also O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (observing that an ADEA plaintiff need not demonstrate that he was disadvantaged in favor of a person outside of the protected class—i.e., younger than 40 years of age—and that he could demonstrate such disadvantage in favor of a "substantially younger" individual); *see generally* Pl.'s Statement; Pl.'s

Opp'n. In fact, the plaintiff has not even so much as identified a single similarly situated younger employee. *Id.;* Pl.'s Dep. at 93, 98. Although the plaintiff asserts that two of his supervisors "used profanity at all times" without consequence, Pl.'s Opp'n at 3; Miller Decl. ¶¶ 3–4, this assertion is misplaced because the plaintiff's supervisors are not proper comparators as a matter of law. *Holbrook,* 196 F.3d at 261; *Barbour v. Browner,* 181 F.3d 1342, 1345 (D.C.Cir.1999); *Neuren,* 43 F.3d at 1514 (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994)). In addition, the plaintiff undercuts his argument by suggesting that there is no evidence that the supervisors' alleged profanity reached the attention of management. *See* Miller Decl. ¶ 5 (stating a belief that the supervisors' alleged profanity went unreported to human resources). Without that integral link, the court is unable to accept the plaintiff's invitation to infer discriminatory conduct on the part of the defendant. On the other hand, the defendant offers considerable evidence indicating that it treated younger employees no differently than the plaintiff. Specifically, the defendant provides evidence that it suspended several younger employees for using inappropriate, profane, or abusive language and other unprofessional conduct involving guests, supervisors, and coworkers. Ballinger Decl. ¶¶ 4–5. The defendant also reveals that it terminated several of its younger employees for falsifying employment-related documents.[5] *Id.* ¶ 4. Further buttressing the defendant's position is the fact that the defendant nei-

---

tape captures the plaintiff "bending, lifting, and walking in a manner which was much different from how he presented [himself] in the [physician's] office today").

4. The plaintiff presents only the statement of a former coworker volunteering her opinion on the plaintiff's job performance. *See* Miller Decl. ¶ 4.

5. Specifically, of the 12 employees the defendant terminated for falsifying employment-related documents between January 2000 and September 2002, six were between the ages of 20 and 30, three were between the ages of 30 and 40, one was 40 years old, and two, including the plaintiff, were over the age of 50. Ballinger Decl. ¶ 4.

ther replaced the plaintiff with a younger employee, nor plans to hire someone to fill the plaintiff's shoes. *Id.* ¶ 7.

At bottom, the plaintiff falls short of establishing a prima facie case of discrimination by not drawing the necessary "inference that age ... was a determining factor in the [defendant's] employment decision[s]." *Cuddy,* 694 F.2d at 856–57. Accordingly, the court grants the defendant's motion for summary judgment on the plaintiff's ADEA unlawful-suspensions claim and his DCHRA termination claim. FED. R. CIV. P. 56(c); *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Aka,* 156 F.3d at 1291; *Diamond,* 43 F.3d at 1540.

## IV. CONCLUSION

For all of the foregoing reasons, the court dismisses the plaintiff's ADEA termination claim and grants the defendant's motion for summary judgment on the remaining claims. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 24th day of May 2004.