### Angela MARSHALL, Appellant,

v.

### FEDERAL EXPRESS CORPORATION, Appellee.

### No. 96–7258.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 4, 1997.

Decided Dec. 12, 1997.

---

Marc Fiedler, Washington, DC, argued the cause for appellant. With him on the briefs was Roger C. Johnson.

Colby W. Morgan, Jr., Memphis, TN, argued the cause for appellee. With him on the brief were Larry S. Kaplan, John T. Midgett, Chicago, IL, and Merrell B. Renaud, Falls Church, VA. R. Mark Dare, Falls Church, VA, entered an appearance.

Before: SILBERMAN, WILLIAMS and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge STEPHEN F. WILLIAMS.

STEPHEN F. WILLIAMS, Circuit Judge:

Angela Marshall was injured while on duty as a Senior Customer Service Agent with Federal Express, making it difficult for her to continue in that work. A fellow employee suggested that she apply for another job with Federal Express, as an Operations Agent at a different facility, which she would have been able to perform without difficulty. Soon thereafter, however, the same employee relayed another employee's belief that because Marshall's husband already worked at the same facility, Marshall could not work there in light of Federal Express's antinepotism rules. By the time Marshall discovered that this advice was wrong, the deadline for applying had passed. Shortly afterward she learned that the company had decided not to fill the spot at all.

Marshall filed a timely complaint with the Equal Employment Opportunity Commission, saying that Federal Express had "denied [her] the opportunity to apply for [the Operations Agent] position," in violation, she believed, of the Americans with Disabilities

Act, 42 U.S.C. § 12101 *et seq.* ("ADA" or the "Act"). Later, because of the impact of the injury on her ability to perform her original job as a Customer Service Agent, Federal Express dismissed her. She filed no EEOC complaint on that subject.

Marshall then filed suit in district court under the Act, claiming discrimination not only in regard to her failure to secure the Operations Agent job but also her termination from the company. The district court granted Federal Express's motion for summary judgment. We affirm. We agree with the district court that Marshall exhausted her administrative remedies only as to her failure to secure the Operations Agent job, and that she failed to raise a material issue of fact to support her claim that Federal Express discriminatorily foreclosed that job.

\*     \*     \*

Marshall began working at Federal Express in 1985. On February 13, 1992 she injured her back while working as a Senior Customer Service Agent at Federal Express's National Press Building station in Washington. She was placed on worker's compensation and began a leave of absence. In May 1992 she entered Federal Express's Temporary Return to Work program, which provides injured workers with light-duty work for 90 days. By the time her participation ended in August, Federal Express had hired someone else to fill her old job. The company, nonetheless, kept her on for some time thereafter, allowing her to extend her leave of absence.

On September 21, 1992 Opal Shields, a Federal Express Leave of Absence Manager, informed Marshall by letter that the lifting restrictions brought on by her injury left her unqualified to return to work as a Senior Customer Service Agent. She would be allowed to file an unlimited number of applications for jobs at Federal Express for which she was qualified, and would be given "placement preference" for such jobs, but if she did not find one within 90 days she would be fired. Federal Express contracted with a rehabilitation counselor to help Marshall find a job. Through Shields, the company also informed her of several job openings for which she could apply. Marshall declined to apply for positions at Dulles Airport in Virginia and in Columbia, Maryland, saying that her back condition prevented her from commuting to those places. She did apply for a sales position in December but Federal Express gave the job to someone else; that decision is not at issue here.

On January 8, 1993 Shields told Marshall about an Operations Agent position that had opened up at Federal Express's "DCA" station and urged her to apply. The parties seem to agree that Marshall's back injury would not have hindered her work as an Operations Agent. When Shields told Gary Aldred, the Senior Manager of the DCA station, that Marshall wanted to apply for the opening, Aldred balked. Marshall's husband already worked at the DCA station, and Aldred told Shields that company policy forbade relatives or spouses from working together. Shields relayed this information to Marshall and told her she could not apply after all.

Marshall suspected that someone had gotten the policy wrong—she recalled that she used to work in the same building as her sister—so she made further inquiries. It turned out Aldred was mistaken. The Federal Express policy manual says that "[b]lood-related and marriage-related employees may be hired and be permitted to work at the same locations, providing no direct reporting or supervisory relationship exists." There would have been no direct reporting or supervisory relationship between Marshall and her husband at the DCA station. By the time Marshall learned that she was indeed eligible to apply, however, the job had passed her by—on January 18 a personnel director told her that no more applications were being accepted. Indeed it soon became apparent that the job had passed everyone by—on January 21 Marshall was told that the Operations Agent vacancy at DCA had been withdrawn for budgetary reasons; this was confirmed a week later in a memorandum to the five candidates who had applied for the position.

In late January Marshall filed a charge with the EEOC, alleging that Federal Express had violated the ADA by not letting her apply for the Operations Agent job. On March 4, 1993—some 75 days after the expiration of her 90–day grace period—Marshall

was fired. In August 1994 the EEOC concluded that the evidence was insufficient to support her ADA claim. This lawsuit followed.

\*     \*     \*

■ Before bringing suit in federal court, ADA plaintiffs, like those under Title VII, must exhaust their administrative remedies by filing an EEOC charge and giving that agency a chance to act on it. 42 U.S.C. § 12117(a); *Park v. Howard University,* 71 F.3d 904, 907–09 (D.C.Cir.1995). A vague or circumscribed EEOC charge will not satisfy the exhaustion requirement for claims it does not fairly embrace. "[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir.1989). Naturally every detail of the eventual complaint need not be presaged in the EEOC filing, but the substance of an ADA claim, like that of a Title VII claim, must fall within the scope of "the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Park,* 71 F.3d at 907 (citation and internal punctuation omitted).

■ Marshall's wrongful termination claim fails to meet this test. The charge filed by Marshall with the EEOC made no mention of her termination. The Commission could not reasonably be expected to investigate Marshall's firing based on the allegations in the charge, which spoke only of Federal Express's failure to allow her to apply for the Operations Agent job. Marshall never filed a second charge alleging a discriminatory termination, nor did she amend her original charge or otherwise bring her termination to the Commission's attention.

Marshall concedes that the wording of her administrative charge failed to put the Commission on notice of her imminent termination, but claims that the accompanying affidavit did the trick. And indeed she did foreshadow her impending discharge in that affidavit, noting that Opal Shields "was in the process of terminating me," and adding, "I feel as if I am being given the run around, and I will be terminated soon."[1] The Seventh Circuit takes the view that allegations in supporting affidavits may be considered for exhaustion purposes if the charging party makes clear that she wants the EEOC to investigate them. See *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 502 (7th Cir.1994). Even assuming the correctness of this approach, we do not read Marshall's off-hand forecasts of looming termination as a request that the EEOC investigate her discharge as a distinct act of discrimination. Marshall's wrongful termination claim is not properly before us.

Marshall also contends that Federal Express discriminated against her by failing to reasonably accommodate her disability. She says the company could have accommodated her in her Customer Service Agent job by waiving the job's lifting requirements or by transferring her to the Operations Agent job. As for waiving the lifting requirements, Marshall runs directly into the problem that thwarted her wrongful termination claim: her administrative charge makes no mention of any refusal to accommodate her lifting limitations or even of her termination (investigation of which might have led back to such a refusal). Thus the EEOC was not on notice to investigate the lifting issue, and Marshall is barred from raising it for the first time in her complaint.

As for Federal Express's failure to transfer her, the story is somewhat more complicated. As we have noted, Marshall's EEOC charge (read in conjunction with its accompanying papers) alleges that she was denied the opportunity to apply for the Operations Agent job, implies that she was given spurious reasons for the denial, and contends that this amounted to discrimination. Now she says, in effect, that the administrative charge implicitly included her current claim—that Federal Express could and should have shift-

1. Marshall also notes that in an internal grievance letter she submitted to Federal Express six days before she lodged the EEOC charge, she commented, "I have less than two weeks before I am obsolete with this company." This letter, however, was not directed to the EEOC and we cannot consider it in our exhaustion inquiry. In any case, the letter adds nothing material to the vague forebodings contained in the affidavit.

ed her to the Operations Agent job as a means of accommodating the apparent conflict between her disability (which we here assume) and the demands of the Customer Service Agent job.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual *in regard to* job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (emphasis added). The statute defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" absent undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). As the language of § 12112(a) makes clear, for discrimination (including denial of reasonable accommodation) to be actionable, it must occur *in regard to* some adverse personnel decision or other term or condition of employment. Here, the only adverse action before us is denial of the chance to apply for the Operations Agent job. In regard to that, both parties agree, Marshall required no accommodation at all: she was as capable of performing the job as anyone. If her termination were properly before us, it might well bring in its train the question whether Federal Express had a duty to take action short of termination by accommodating Marshall's disability-driven limitations in her former job. But, as we have seen, that claim has not been preserved. Thus there is no adverse action before us with any nexus to a possible denial of reasonable accommodation.

The same analysis governs the definition of discrimination in 42 U.S.C. § 12112(b)(5)(B), which includes "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." In view of the agreement that Marshall was perfectly fit for the Operations Agent job, denial of the opportunity to secure it could not have been "based on the need of [Federal Express] to make reasonable accommodation to [Marshall's] physical or mental impairments."

We assume without deciding that if working conditions inflict pain or hardship on a disabled employee, the employer fails to modify the conditions upon the employee's demand, and the employee simply bears the conditions, this could amount to a denial of reasonable accommodation, despite there being no job loss, pay loss, transfer, demotion, denial of advancement, or other adverse personnel action. Such a scenario might be viewed as the ADA equivalent of the hostile working environment claim cognizable under other discrimination laws. Cf. *Stewart v. County of Brown,* 86 F.3d 107 (7th Cir.1996); *Vande Zande v. Wisc. Dep't of Administration,* 44 F.3d 538, 546 (7th Cir.1995). But Marshall's charge failed to put any work environment before the EEOC; even if we stretched the point and read her charge as implicating the environment of the Operations Agent job, it remains the case that her disability (if any) created no occasion for accommodation in that job.

\*          \*          \*

■ We now turn to the question that was properly presented by Marshall's EEOC charge: whether Federal Express discriminated against her on the basis of disability in refusing to let her apply for the Operations Agent position. The district court found that it did not, holding that Marshall was not disabled within the meaning of the ADA, 42 U.S.C. § 12102(2)(A). The court also noted that Federal Express had offered a legitimate, non-discriminatory reason for its actions, and that Marshall had supplied no evidence to show that the reason was pretextual. Because we agree with the district court on this latter ground, we do not reach the issue of disability.

We have approved the use of the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), as a tool for analysis in ADA cases—at least in cases where the plaintiff offers no direct evidence tending to show discriminatory animus and the defendant denies that its decisions were motivated by the plaintiff's dis-

ability. See *Aka v. Washington Hospital Center,* 116 F.3d 876, 885–86 (D.C.Cir.1997), vacated on other grounds pending rehearing *en banc,* 124 F.3d 1302 (D.C.Cir.1997); cf. *Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir. 1993) (Rehabilitation Act). This is such a case: Marshall has come forward with no direct proof of discriminatory motivation, and Federal Express for its part asserts that the Operations Agent position was eliminated after a staffing analysis had determined that the job could be handled using current employees. We assume without deciding that Marshall is disabled in the statutory sense and has made out the other elements of her prima facie case. Federal Express having offered a nondiscriminatory reason for the dismissal, the burden shifted to Marshall to show that Federal Express's cost-cutting rationale was just a cover-up for illicit discrimination.

Marshall cites two items as indicators of pretext. First, she says, based on her seven years of experience at Federal Express and her husband's first-hand familiarity with the DCA station, that the company's fiscal explanation simply cannot be believed. As she put it in her deposition testimony, "I know that they need an operations agent position." But such a conclusory observation fails to create a material issue of fact as to Federal Express's claimed motivation. Marshall has laid no foundation for any expertise on the issue of whether an extra employee at that position was worth the cost to Federal Express.

Second, Marshall points to the confusion over Federal Express's policy on employment of relatives as evidence that the company's cost-cutting rationale is specious. Her argument seems to be that because a Federal Express employee gave her what turned out to be an unfounded reason for refusing to accept her application, Federal Express must be giving the court an insincere reason for canceling the position altogether. We find the logic of this difficult to fathom. If the company's true aim was to disadvantage Marshall because of her disability, why would it take the drastic step of zeroing out the entire Operations Agent position, thereby also disadvantaging not only Marshall but all five applicants (none of whom, so far as we know, was disabled), not to mention depriving itself of the net advantage of filling the position? It would have been much simpler to refrain from informing Marshall about the job in the first place. Indeed, Marshall's effort to draw a sinister inference from the nepotism mix-up runs into the fact that the company itself alerted her to this and several other job openings.

In sum, a rational fact-finder would need more than Marshall has provided before it could "second-guess an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach v. District of Columbia Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (quoting *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982)). Even assuming that Marshall made out a prima facie case under the first part of the *McDonnell Douglas* test—a proposition the district court rejected and on which we take no position—she has failed to raise a genuine issue of fact as to whether Federal Express's reason was pretextual.

The judgment of the district court is

*Affirmed.*