**Janet HOWARD, Plaintiff,**

v.

**Donald L. EVANS, Secretary of the U.S. Department of Commerce, Defendant.**

**No. CIV.A.01–1498(RMU).**

United States District Court, District of Columbia.

March 29, 2002.

seeking an injunction to prevent that agency from assigning her to an office space which she considers detrimental to her health. In her complaint and motion for injunctive relief, the *pro se* plaintiff, Janet Howard ("the plaintiff"), claims that a change in her work environment will cause irreparable damage to her mental and physical health, and could lead to her premature death. After consideration of the parties' submissions and the relevant law, the court concludes that the plaintiff has not exhausted her administrative remedies before initiating the current action and thereby fails to sufficiently demonstrate that she has a substantial likelihood of success on the merits, a necessary element for injunctive relief. Accordingly, the court does not have jurisdiction over the case and denies the plaintiff's motion for injunctive relief and dismisses the complaint.

## II. BACKGROUND

### A. Factual Background

The plaintiff seeks to enjoin her employer, the U.S. Department of Commerce, Bureau of Export Analysis, Office of Enforcement Analysis, from assigning the plaintiff to an office space which she considers unsuitable, and to have her computer, telephone, and cabinets installed and reconnected in order that she may resume her assigned duties and responsibilities at work. *See* Compl. at 7–8. The defendant is Donald L. Evans, the Secretary of the U.S. Department of Commerce ("the defendant"),[1] named in his official capacity.

Janet Howard, Spotsylvania, VA, Pro se.

Edith M. Shine, Assistant United States Attorney, Civil Division, Washington, DC, for Defendant.

### *MEMORANDUM OPINION*

DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DISMISSING THE PLAINTIFF'S COMPLAINT

URBINA, District Judge.

## I. INTRODUCTION

An employee of the U.S. Department of Commerce brings this Title VII action

---

**1.** Although the complaint names Mr. Thomas Andrukonis as the defendant in the action, pursuant to 42 U.S.C. § 2000e–16(c), the head of the agency is the only proper defendant. *See* 42 U.S.C. § 2000e–16(c). Because the agency at issue is the U.S. Department of Commerce, Secretary Donald L. Evans is the proper defendant.

The plaintiff alleges that her office reassignment from "room 4066 on the fourth floor," which she describes as a "bright, airy, and tranquil space," would cause irreparable damage to her mental and physical health, as she claims to suffer from a systemic occupational illness. *See id.* at 2; Pl.'s T.R.O. Mot. at 1. The plaintiff has occupied room 4066 for more than five years and argues that a change in her work environment could lead to further health injuries or premature death. *See* Compl. at 2.

In support of the plaintiff's motion for a preliminary injunction, the plaintiff submits a letter written by her treating psychiatrist to the U.S. Department of Commerce Director of Enforcement Analysis, Mr. Thomas Andrukonis, dated June 28, 2001, which states that the plaintiff is suffering from "acute and post traumatic stress induced by discord at her job." *See* Pl.'s T.R.O. Mot., Ex. 1. The letter also states that the plaintiff's recovery must involve the cooperation of her supervisors not to impose "sudden deliberate changes" on the plaintiff. *See id.* The letter further explains that her employer's disruption of the plaintiff's "office, telephone access, and proximity to amicable co-workers ... constitutes unnecessary and deliberately imposed stress ... result[ing] in reinjury." *See id.* In its conclusion, the letter causally links the plaintiff's heart condition to the aforementioned changes in her work environment. *See id.*

Aside from various disparaging remarks allegedly directed at the plaintiff by Mr. Andrukonis, and allegedly being the subject of her co-workers' jokes, the plaintiff also asserts that Mr. Andrukonis and the "top level managers" in the plaintiff's office have failed to provide her with assistance to deter Mr. Andrukonis's actions. *See* Compl. at 2; Pl.'s T.R.O. Mot. at 2–3. The plaintiff further alleges that she has "filed 10 EEO complaints" against Mr. Andrukonis in addition to other EEO complaints. *See* Compl. at 1. Before pursuing the current action with this court, however, the plaintiff did not file a complaint with the EEOC because she believes that "among African Americans, there is a stigma associated with anyone who sees a psychiatrist, there is also a name for such people (crazed)." *Id.* at 9. As the lead agent in a class action suit involving thousands of African Americans employed by the U.S. Department of Commerce, the plaintiff insinuates that her employer is intentionally trying to cause the plaintiff premature death so that she would not survive to represent herself and other members of the class. *See id.* at 10; Pl.'s T.R.O. Mot. at 2. Incidentally, the plaintiff claims that one of the defendants in that class action suit is Mr. Andrukonis. *See* Compl. at 1.

The defendant counters that the changes complained of by the plaintiff are all part of the U.S. Department of Commerce's plan to renovate its office space. *See* Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. at 2–3. In a meeting held on May 10, 2000, Mr. Andrukonis allegedly explained that the location of the employees in the office would be arranged around the organization of the three divisions so that employees may be functionally located. *See id.* at 3–4. Mr. Andrukonis also stated that the plaintiff's division would be located in rooms 4061 through 4073. *See id.* at 3. In a subsequent staff meeting held on May 31, 2001, Mr. Andrukonis discussed the plaintiff's move across the hall to be with the rest of the staff in her division. *See id.* at 4., Ex. 1, Attach. 5.

On June 18, 2001, Mr. Andrukonis informed employees located in rooms 4066/4068, including the plaintiff, that they should move out of those offices because construction would soon commence. *See id.* The plaintiff objected to being moved

out of her office. *See* Pl.'s T.R.O. Mot. at 1; Compl. at 5; Def.'s Mot. for Summ. J. at 5. In response to her objection, Mr. Andrukonis met with the plaintiff on June 21, 2001, to discuss the various options at their disposal regarding the plaintiff's workspace and proposed several options for her consideration. *See* Def.'s Statement of Material Facts in Supp. of Mot. for Summ. J. at 5; Def.'s Mot. for Summ. J. at 6. All of the proposed options were rejected by the plaintiff. *See id.* Mr. Andrukonis then asked the plaintiff to suggest an office location for the plaintiff to occupy. *See* Def.'s Mot. for Summ. J. at 6. The plaintiff did not provide any suggestions in response. *See id.*

Over the course of the next two weeks, Mr. Andrukonis indicates that he made repeated attempts to secure the plaintiff an alternative workspace desirable to the plaintiff. *See id.* at 6–9. Just as before, the plaintiff apparently declined to accept any of these proposed alternative office locations. *See id.* On July 6, 2001, the plaintiff was shown the work space in room 4620, which was a semiprivate location with two offices in one work bay, one employee in each office space. *See* Def.'s Statement of Material Facts in Supp. of Def.'s Mot. for Summ. J. at 5–6. The plaintiff supposedly indicated that she would not move there either. *See id.* at 6.

The defendant alleges that no one in the plaintiff's position is located in an office space similar to room 4620, with the exception of one employee for documented medical reasons. *See* Def.'s Mot. for Summ. J. at 9. The defendant also claims that room 4620 offers the plaintiff a better workstation than the one she had because it would provide the plaintiff with the privacy she has requested and keep her separated from the rest of her division. *See id.* The office also allows the plaintiff to keep her telephone access just as the plaintiff had before. *See id.* Furthermore, because construction has already commenced, the plaintiff's old workstation no longer exists and it would be "impossible" for the plaintiff to return to her old workstation in light of the cost of tearing down the new construction. *See id.* at 9–10.

### B. Procedural History

This matter came before the court on a complaint filed July 9, 2001, and a motion for a temporary restraining order ("TRO") filed by the plaintiff on July 11, 2001. In response, the defendant filed a motion for summary judgment on July 13, 2001.

After receiving the parties' consent, the court issued an order on July 23, 2001, converting the plaintiff's TRO motion to a motion for a preliminary injunction. *See* Order dated July 23, 2001. The plaintiff opposed the defendant's motion for summary judgment by filing a "motion in objection to [d]efendant's motion for summary judgment" on August 10, 2001.

On August 28, 2001, the plaintiff filed what is titled in part as an "amended complaint" in order to include a claim for retaliation.[2] In response, the defendant

---

2. The defendant properly states in its motion to strike the plaintiff's "amended complaint" that the plaintiff's "amended complaint" is not truly an amended complaint, but is a supplement to the plaintiff's original complaint. *See* Def.'s Mot. to Strike at 1, 3. Nevermind the fact that the plaintiff did not first seek permission from the court to supplement her complaint as is required under Federal Rule of Civil Procedure 15(d), a plaintiff may supplement a complaint by setting forth events which have occurred since the date of the original complaint. *See* Fed.R.Civ.P. 15(d). Although the Federal Rules allow a plaintiff to amend the complaint as a matter of course at any time before a responsive pleading is served, that is not the case for supplemental pleadings. *Compare* Fed.R.Civ.P. 15(a) with Fed.R.Civ.P. 15(d).

The court affords, however, a measure of leniency to *pro se* plaintiffs, and the court would grant the plaintiff leave to file the supplemental complaint (even though she did not

filed a motion to strike the plaintiff's amended complaint.

## III. ANALYSIS

The central issue facing the court is whether to grant the plaintiff's requested injunctive relief.

### A. Legal Standard for Preliminary Injunctive Relief

■■■ This court may issue a preliminary injunction only when the movant demonstrates:

(1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharmaceutical Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir. 1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). The district court must balance the strengths of the moving party's arguments on each of the four factors. *See CityFed Fin. Corp.,* 58 F.3d at 747. "These factors interrelate on a sliding scale and must be balanced against each other." [3] *Davenport v. International Bhd.*

*of Teamsters,* 166 F.3d 356, 361 (D.C.Cir. 1999) (citing *Serono Labs. v. Shalala,* 158 F.3d 1313, 1318 (D.C.Cir.1998)).

■■■ In addition, a particularly strong showing on one factor may compensate for a weak showing on one or more of the other factors. *See Serono Labs.,* 158 F.3d at 1318. "An injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *CityFed Fin. Corp.,* 58 F.3d at 747. If the plaintiff makes a particularly weak showing on one factor, however, the other factors may not be enough to compensate. *See Taylor v. Resolution Trust Corp.,* 56 F.3d 1497, 1507 (D.C.Cir.1995), *amended on other grounds on reh'g,* 66 F.3d 1226 (D.C.Cir.1995).

■■■ It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (*per curiam*). Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *American Bankers Ass'n v. National Credit Union Admin.,* 38 F.Supp.2d 114,

---

first request leave to do so) were it not for the futility of the proposed retaliation claim. *See* Fed.R.Civ.P. 15(a); *James Madison Ltd. v. Ludwig,* 82 F.3d 1085, 1099 (D.C.Cir.1996) (holding that courts may deny a motion to amend the complaint if the proposed claim would not survive a motion to dismiss). As it will later be revealed, the plaintiff's claims fail as a matter of law and the complaint must be dismissed for her failure to exhaust administrative remedies before initiating the instant case. *See infra* III.B. As such, the plaintiff's "amended complaint" cannot withstand a motion to dismiss for the same reasons and the only appropriate response from the court is to grant the defendant's motion to strike the plaintiff's "amended complaint." *See* Fed.

R.Civ.P. 15(a); *James Madison Ltd.,* 82 F.3d at 1099. Accordingly, the plaintiff's "amended complaint" is hereby stricken from the record.

3. When a party seeks a mandatory injunction, i.e., to change the *status quo* rather than to preserve it, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *See Columbia Hosp. for Women Found., Inc. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 4 (D.D.C.1997) (internal quotations omitted), *aff'd,* 159 F.3d 636 (D.C.Cir.1998) (table, text in Westlaw).

140 (D.D.C.1999) (internal quotation omitted).

Moreover, the other salient factor in the injunctive-relief analysis is irreparable injury. A movant must "demonstrate at least 'some injury'" to warrant the granting of an injunction. *CityFed Fin. Corp.*, 58 F.3d at 747. Indeed, if a party makes no showing of irreparable injury, the court may deny the motion for injunctive relief without considering the other factors. *See id.*

Finally, because preliminary injunctions are extraordinary forms of judicial relief, courts should grant them sparingly. *See Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *See Ambach v. Bell*, 686 F.2d 974, 979 (D.C.Cir. 1982). In addition, any injunction that the court issues must be carefully circumscribed and tailored to remedy the harm shown. *See National Treasury Employees Union v. Yeutter*, 918 F.2d 968, 977 (D.C.Cir.1990) (citation omitted).

**B. Because the Plaintiff Has Not Exhausted Her Administrative Remedies, The Court Denies The Plaintiff's Motion for a Preliminary Injunction for Failing to Demonstrate a Likelihood of Success on the Merits of Her Title VII Claim**

Applying the first prong of the four-part test, the court determines that the plaintiff has failed to sufficiently demonstrate a likelihood of success on the merits of the plaintiff's Title VII claim. As suggested earlier, the D.C. Circuit has held certain that the likelihood of success on the merits is one of the four criteria needed in order for interim injunctive relief to issue. *See CityFed Fin. Corp.*, 58 F.3d at 746; *American Bankers Ass'n*, 38 F.Supp.2d at 140. Thus, if a plaintiff cannot show the likelihood that he will succeed on the merits of his claim, even a very strong showing on the other three factors will not justify the extraordinary remedy of preliminary injunctive relief. *See id.*

The defendant argues that it is unlikely for the plaintiff to succeed on the merits of her claim since the plaintiff did not administratively present a timely complaint to the Department of Commerce. *See* Def.'s Mot. for Summ. J. at 11, 16. As previously noted, the plaintiff states in her complaint that she did not first present this matter to the EEOC before filing her claim in this court because the EEOC is "back logged" with complaints and, as a result, a timely resolution would not be reached in her case. *See* Compl. at 9. As such, she requests that the court "send a stronger message" to the defendants by resolving her claim and thereby forgiving her unwillingness to submit her claim to the EEOC before filing the current action with the court. *See id.* at 10.

The rule is that a federal employee may assert a Title VII complaint in court only after a timely complaint has been presented administratively to the agency involved. *See Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976); *Marshall v. Federal Express Corp.*, 130 F.3d 1095, 1098 (D.C.Cir.1997). The purpose behind this rule is to provide the agency with notice and an opportunity to rectify any wrong through the conciliation process or through administrative relief. *See Brown*

*v. General Servs. Admin.*, 425 U.S. at 833–35, 96 S.Ct. 1961; *Brown v. Marsh*, 777 F.2d 8, 14 (D.C.Cir.1985). Additionally, EEOC regulations implemented pursuant to 42 U.S.C. § 2000e–16(b) require the aggrieved party to contact a counselor within 45 days of the alleged discriminatory act. *See* 29 C.F.R. § 1614.105(a)(1). If a plaintiff fails to exhaust administrative remedies, that plaintiff may not raise the claims in district court. *See* 42 U.S.C. § 2000e–16(c). This requirement is "not a mere technicality;" rather, the D.C. Circuit has clearly admonished that a district court should not "allow liberal interpretation of an administrative charge to permit a litigant to bypass the Title VII administrative process." *Park v. Howard University*, 71 F.3d 904, 907–09 (D.C.Cir.1995).

Applying these principles to the case at bar demonstrates that the plaintiff's failure to exhaust administrative remedies before filing the present action against the defendant bars her claim for injunctive relief. *See* 42 U.S.C. § 2000e–16(c). Further, the defendant argues that, in connection with the requirements imposed by 42 U.S.C. § 2000e–16(b), the plaintiff had barely begun to meet with an EEO counselor before initiating the present litigation regarding the relocation of her work station, and that the defendant was not given ample time to investigate, mediate, and alleviate the situation. *See* Def.'s Mot. for Summ. J. at 16. Accordingly, because the plaintiff's complaint admits, in no uncertain terms, that she did not seek administrative remedies before initiating the current lawsuit, this court must dismiss the plaintiff's complaint since it lacks subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See* FED. R. CIV. P. 12(b)(1); 42 U.S.C. § 2000e–16(c); *Brown v. General Servs. Admin.*, 425 U.S. at 832, 96 S.Ct. 1961; *Marshall*, 130 F.3d at 1098; *Park*, 71 F.3d at 907–09; *American Bankers Ass'n*, 38 F.Supp.2d at 140 (internal quotation omitted).

The court's analysis of the plaintiff's preliminary injunction motion stops here because the court need not determine the viability of the plaintiff's arguments respecting the remaining three prongs of the preliminary injunction standard in light of the rule that a preliminary injunction may only issue when the movant demonstrates a showing that supports *all* four of the preliminary injunction factors previously named. *See Mova Pharmaceutical Corp.*, 140 F.3d at 1066; *CityFed Fin. Corp.*, 58 F.3d at 746; *World Duty Free Americas, Inc.*, 94 F.Supp.2d at 64.

## IV.  CONCLUSION

For all of the foregoing reasons, the court denies the plaintiff's motion for a preliminary injunction and dismisses the plaintiff's complaint. Because the court's resolution of the plaintiff's motion for equitable relief has resulted in a dismissal of the case, all other pending motions in this matter, including the defendant's motion for summary judgment are denied as moot. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 29 day of March 2002.

## ORDER

### DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION AND DISMISSING THE PLAINTIFF'S COMPLAINT

For the reasons stated in the court's Memorandum Opinion separately and contemporaneously issued,

it is this ⸺⸺⸺ day of March 2002,

**ORDERED** that the plaintiffs' motion for a preliminary injunction is **DENIED**; and it is

**FURTHER ORDERED** that the plaintiff's complaint is **DISMISSED**; and it is

**ORDERED** that all other pending motions in the case are **DENIED AS MOOT.**

**SO ORDERED.**