**Zena D. CRENSHAW, Plaintiff,**

v.

**Joan S. ANTOKOL et al., Defendants.**

**Civil Action No. 02–2215 (RMU).**

United States District Court, District of Columbia.

Nov. 20, 2002.

Watch's clients, of which Dale was one.

Terry G. Duga, Office of the Attorney General, Indianapolis, IN, Francis J. Gorman, Gorman R. Williams, Baltimore, MD, Paul J. Maloney, Carr Maloney, P.C., Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

URBINA, District Judge.

**DENYING THE PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## I. INTRODUCTION

*Pro se*[1] plaintiff Zena D. Crenshaw ("the plaintiff") brings this action alleging violations of the United States Constitution and of federal civil conspiracy and civil rights statutes. Ms. Crenshaw names 25 defendants, who appear[2] to consist of ten private-sector lawyers, three law firms, a financial institution, a pharmaceutical company, and the executive secretary and nine members of the Disciplinary Commission for the Supreme Court of Indiana (collectively, "the defendants"). Simultaneously, the plaintiff filed a motion for a temporary restraining order preventing the defendants associated with the Disciplinary Commission (collectively, "the Commission defendants") from proceeding with a disciplinary hearing against her, and a motion for a preliminary injunction barring the same defendants from initiating any course of action to injure the plaintiff. At the behest of the court, the Commission defendants filed a responsive pleading. The Commission defendants move to dismiss the underlying complaint for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim on which relief may be granted. The Commission defendants also raise various defenses premised on immunity and federal-state comity.

For the reasons that follow, the court denies the plaintiff's motions for a temporary restraining order and for a preliminary injunction.

## II. BACKGROUND

### A. Factual Background

From the plaintiff's 85–page complaint, the court with considerable difficulty gleans the following factual allegations,

---

1. Although the plaintiff is *pro se,* she is an attorney.

2. The plaintiff's complaint does not clearly identify the defendants' affiliations or their relationship to the events alleged.

which outline a complicated and interlocking series of events and lawsuits:

The plaintiff is an African–American woman who was admitted to the practice of law in Indiana. Compl. ¶ 1. In 1993, on behalf of minor client Sylvia Sanchez, the plaintiff brought suit in Indiana state court against Hoffmann–LaRoche, a pharmacy, and three individuals. *Id.* ¶ 2. The *Sanchez* complaint alleged a civil conspiracy that resulted in injury to the plaintiff's client from an adverse drug reaction. *Id.* ¶¶ 3, 16–19, 26. In that litigation, attorneys Ralph Cohen, Bonnie Gallivan, and Anita Hodgson of Ice Miller Donadio & Miller ("Ice Miller") represented Hoffmann–LaRoche. *Id.* ¶¶ 6, 27.

The trial judge granted Hoffman–LaRoche's motion to dismiss. *Id.* ¶¶ 20, 22. Subsequently, the plaintiff successfully moved to amend her client's complaint. *Id.* ¶¶ 23–25. After some discussions between the plaintiff and attorney Hodgson, Hoffmann–LaRoche moved to dismiss the plaintiff's amended complaint and requested attorney's fees based on the plaintiff's "frivolous" action. *Id.* ¶¶ 36, 39–49, 50, 77. The trial judge again granted Hoffmann–LaRoche's motion to dismiss but reserved ruling on attorney's fees until the plaintiff's appeal of the dismissal was resolved. *Id.* ¶¶ 73, 77. The state court of appeals affirmed the trial judge's dismissal, and the Indiana Supreme Court refused review. *Id.* ¶¶ 79, 85, 89, 94. Hoffman–LaRoche promptly renewed its request for attorney's fees, which the trial judge granted in 1997. *Id.* ¶¶ 95, 104, 131–35. The state court of appeals later reversed the trial judge on the issue of attorney's fees, however, with the Indiana Supreme Court again declining review. *Id.* at ¶¶ 136, 140.

Not satisfied with the state appellate process, the plaintiff took two additional steps. ¶ 141. First, she expressed her dissatisfaction by filing a complaint in state court (later removed to federal court) against the *Sanchez* trial judge alleging violations of the United States Constitution, federal civil rights law, state conspiracy and declaratory judgment law. *Id.* ¶ 233; *see Crenshaw v. Dywan,* 34 F.Supp.2d 707 (N.D.Ind.1999). The federal judge presiding over her case recused himself in the interests of justice after the plaintiff, citing alleged improper conduct by that judge in a previous case, twice moved to disqualify him. Compl. ¶¶ 234–35; *see also* Defs.' Mot. to Dismiss at 3. Because the judge found her allegations to be categorically false, however, he referred the matter to the Disciplinary Commission for the Supreme Court of Indiana ("Commission"). *Id.* This grievance became one of the bases for the imminent disciplinary proceeding. *Id.* ¶¶ 234, 276; *see also* Defs.' Mot. to Dismiss at 3.

Second, the plaintiff met with several African–American attorneys in Lake County, Indiana and concluded that her treatment by the *Sanchez* trial judge was typical for minority attorneys prosecuting complex personal injury claims. *Id.* ¶¶ 142–43. At a June 1997 press conference held by a coalition of politicians, activists, churches, and citizens, she stated that the trial judge had taken action against her based on her race, and announced that she would be forwarding charges to the Indiana civil rights and judicial qualifications authorities, a step she took within a few days. *Id.* ¶¶ 143–45, 160. In response to a query from the judicial qualifications commission, the plaintiff wrote a letter stating that the trial judge's ruling was consistent with the pattern of bias emanating from the state's courts of general jurisdiction. *Id.* ¶¶ 162–63. The plaintiff later sent a copy of the letter to the state civil rights commission and circulated among members of the primarily African–Ameri-

can James Kimbrough Bar Association ("JKBA") and the Lake County Bar Association ("LCBA"). *Id.* ¶¶ 164–66.

Within a few weeks, both the judicial qualifications commission and the civil rights commission dismissed the matter. *Id.* ¶¶ 168–69. Shortly thereafter, the LCBA board considered but eventually decided against filing a disciplinary complaint against the plaintiff. *Id.* ¶¶ 170–74. Notwithstanding the LCBA board's decision, in December 1997 LCBA member Robert F. Parker filed a grievance with the Commission against the plaintiff. *Id.* ¶¶ 176–177, 190. This grievance forms an additional basis for the upcoming disciplinary proceeding. *Id.* ¶¶ 257, 259; *see also* Defs.' Mot. to Dismiss at 2.

Meanwhile, the plaintiff received notice in May 1997 that the former personal representative of her mother's estate (the "Crenshaw estate") had filed a separate grievance questioning the plaintiff's use of certain cash assets of the estate. *Id.* ¶¶ 193, 196. The attorney for the estate, James Martin, then petitioned the plaintiff for authority to hire an attorney to recover estate assets. *Id.* ¶¶ 199–200. In July 1997, after receiving a copy of the Martin petition, the Commission subpoenaed the plaintiff for information about the estate. *Id.* ¶ 202. Believing she was facing heightened Commission scrutiny prompted by her charges against the *Sanchez* trial judge, the plaintiff "forwarded a complaint"[3] to the United States District Court for the Southern District of Indiana. *Id.* ¶¶ 210–11. In April 1999, after Commission executive secretary Donald R. Lundberg indicated that the plaintiff would be disciplined, the Commission suspended the plaintiff from the practice of law. *Id.* ¶¶ 213–14, 245. Two years later, in May 2001, the Commission dismissed the grievance stemming from the Crenshaw estate for lack of reasonable cause for misconduct. *Id.* ¶ 227.

The complaint goes on to reference a convoluted tangle of state and federal lawsuits stemming from the *Sanchez* litigation, the Crenshaw estate, Commission actions, and various other matters. For example, at some point the plaintiff and her brother sued the former personal representative of their mother's estate for breach of duty and defamation. *Id.* ¶ 219. The plaintiff also appears to have sued defendant Lundberg and another Commission official in state court for unlawful retaliation. *Id.* ¶¶ 229, 232. At another point, the plaintiff apparently took legal action against defendant Bank One Trust Company ("Bank One"), the successor personal representative of the Crenshaw estate. *Id.* ¶¶ 282–83, 289, 295–307, 343.[4]

### B. Procedural History

On November 8, 2002, the plaintiff filed a complaint in this court against 25 defendants, identified in the caption as Joan S. Antokol; Ralph A. Cohen; Bonnie L. Gallivan; Anita M. Hodgson; Ice Miller Donadio & Ryan; Hoffmann–LaRoche, Inc.; Julie McMurray; William P. Wooden; Wooden & McLaughlin, LLP; Robert F. Parker; Rehana Adat; Bank One Trust Company, N.A.; James W. Martin; Mary A. Paschen; Spangler Jennings & Dougherty, P.C.; Donald R. Lundberg; Diane L. Bender; Janet L. Biddle; Thomas J. Brunner, Jr.; Julia Blackwell Gelinas; David L. Hale; Grant W. Hawkins; William F. Lawler, Jr.; Robert L. Lewis; and

---

3. It is not clear from the complaint whether the plaintiff formally initiated a lawsuit.

4. It appears that the plaintiff initiated federal actions against the state supreme court and state civil rights commission as well. *See Crenshaw v. Sup. Ct. of Ind.,* 170 F.3d 725 (7th Cir.1999) and *Crenshaw v. Baynerd,* 180 F.3d 866 (7th Cir.1999).

Kerry L. Thompson.[5] Compl. at 1. In her complaint the plaintiff alleges that the various defendants violated the federal Racketeer Influenced and Corrupt Organizations ("RICO") Act [Count I], the federal Civil Rights Act of 1871, 42 U.S.C. § 1983 [Count II], and the First Amendment [Count III]. *Id.* at 2, 79, 81.

On the same day, the plaintiff filed a motion for a temporary restraining order preventing the Commission defendants from proceeding with a two-day disciplinary hearing scheduled to commence on November 21, 2002. Pl.'s Mot. for T.R.O. at 1, 3, 4. She also filed a motion for a preliminary injunction barring the Commission defendants from initiating or continuing any course of action to harass or injure the plaintiff. Pl.'s Mot. for Prelim. Inj. at 1–2.

On November 15, 2002, the Commission defendants filed a motion to dismiss for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim upon which relief may be granted. Defs.' Mot. to Dismiss at 2. The Commission defendants also raise the defenses of quasi-judicial immunity, state sovereign immunity pursuant to the Eleventh Amendment, and the *Younger* abstention doctrine. *Id.* None of the remaining defendants have filed responses to the pending motions.

Subsequently, on November 19, 2002, the plaintiff filed a supplemental memo-randum providing additional authority in support of her motions for a temporary restraining order and a preliminary injunction. Pl.'s Mem.

## III. ANALYSIS

### A. The Court Denies the Plaintiff's Motions for Interim Injunctive Relief Because the Plaintiff Has Not Demonstrated a Substantial Likelihood of Success on the Merits

#### 1. Legal Standard for Injunctive Relief

This court may issue interim injunctive relief only when the movant demonstrates:

> (1) a substantial likelihood of success on the merits, (2) that it would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction.

*Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C.Cir.1998) (quoting *CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995)); *see also World Duty Free Americas, Inc. v. Summers,* 94 F.Supp.2d 61, 64 (D.D.C.2000). It is particularly important for the movant to demonstrate a substantial likelihood of success on the merits. *Cf. Benten v. Kessler,* 505 U.S. 1084, 1085, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (per curiam). Indeed, absent a "substantial indication" of

---

**5.** Given the complicated factual allegations, the court takes a moment to attempt to identify the relationship of the defendants to the plaintiff. *See* note 2, *supra.* Defendants Antokol, Cohen, Gallivan, Hodgson, Ice Miller, Hoffmann–LaRoche, and McMurray are associated with the *Sanchez* litigation. Compl. ¶¶ 6, 27–29, 316, 355. Defendants Wooden and Wooden & McLaughlin apparently represented some or all of these defendants in related federal actions. *Id.* ¶¶ 317, 355. Defendant Parker filed the disciplinary griev-ance regarding the plaintiff's statements about the *Sanchez* trial judge. *Id.* ¶¶ 176–77. Defendant Martin is associated with the Crenshaw estate and related litigation, as are (apparently) defendants Adat, Paschen, and Spangler Jennings & Dougherty. *Id.* ¶¶ 199, 344. Defendant Lundberg is the Commission's executive secretary. *Id.* ¶ 212. Defendants Bender, Biddle, Brunner, Gelinas, Hale, Hawkins, Lawler, Lewis, and Thompson are members of the Commission. *Id.* at 1, ¶ 379.

likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F.Supp.2d 114, 140 (D.D.C.1999) (internal quotation omitted).

Because interim injunctive relief is an extraordinary form of judicial relief, courts should grant such relief sparingly. *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997). As the Supreme Court has said, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Id.* (citation omitted). Therefore, although the trial court has the discretion to issue or deny a preliminary injunction, it is not a form of relief granted lightly. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C.Cir.1982).

## 2. The Court Concludes That the Plaintiff Has Not Demonstrated a Substantial Likelihood of Success on the Merits

The plaintiff indicates that she has a substantial likelihood of success on the merits of her claims against the Commission defendants; that there is a great likelihood that she will suffer irreparable injury without the requested relief; that the relief will not substantially harm others; and that the relief serves to protect the public's interest. Pl.'s Mot. for Prelim. Inj. ¶¶ 4–7; Pl.'s Mot. for T.R.O. ¶¶ 11, 22. In light of the importance of the "substantial likelihood of success" factor, the court considers it first. *Am. Bankers Ass'n*, 38

F.Supp.2d at 140. Because the plaintiff fails to demonstrate a substantial likelihood of success on the merits, the court declines to grant the extraordinary relief she requests. *Id.*

The plaintiff contends that she "has a substantial likelihood of success on [the merits of] Count III" of the underlying action. Pl.'s Mot. for Prelim. Inj. ¶ 4. Count III of her complaint requests a declaratory judgment and permanent injunction against the Commission defendants. Compl. at 80. This request for relief appears to be premised on the heightened scrutiny—manifested in part by the upcoming disciplinary proceeding—to which the Commission allegedly subjected the plaintiff after her public comments about the *Sanchez* trial judge.[6] *Id.* ¶¶ 381, 385–86. According to the plaintiff, the Commission's increased scrutiny was undertaken in bad faith for the purpose of inhibiting her constitutional right to freedom of expression. *Id.* ¶¶ 381–83, 386. It is on this claim that the plaintiff believes that she enjoys a substantial likelihood of success if the case were to proceed to trial. Pl.'s Mot. for Prelim. Inj. ¶ 4.

In their response to the plaintiff's motions for interim injunctive relief, the Commission defendants move to dismiss for lack of personal jurisdiction, improper venue, insufficiency of service of process, and failure to state a claim on which relief may be granted, and by raising defenses grounded in immunity and federal-state comity. Defs.' Mot. to Dismiss at 2.

The court determines that the plaintiff has failed to demonstrate a substantial likelihood of success on the merits. *Mova*

---

**6.** Among the statements made in Count III are several describing the views of the Indiana Supreme Court regarding public criticism of a judicial official by an Indiana lawyer. *E.g.*, Compl. ¶¶ 387–92. The Indiana Supreme Court is not a defendant in this action, and it is unclear whether the plaintiff is ascribing that court's views to the Commission defendants. The court therefore focuses on the statements in Count III that refer to the Commission defendants.

*Pharm. Corp.*, 140 F.3d at 1066. Of particular concern to the court is the threshold question of venue. The plaintiff asserts venue under 18 U.S.C. § 1965, the special venue provision for RICO claims. Compl. at 1–2; Pl.'s Mot. for T.R.O. ¶ 3. Under Section 1965(a), a plaintiff may bring a civil RICO action in federal district court for any district in which the defendant "resides, is found, has an agent, or transacts his affairs." 18 U.S.C. § 1965(a). In addition, Section 1965(b) provides that if the court finds that "the ends of justice [so] require," venue also will be proper for other parties in the case notwithstanding their failure to meet the requirements of Section 1965(a). 18 U.S.C. § 1965(b); *Mylan Labs., Inc. v. Akzo, N.V.*, 1990 WL 58466, at *10 (D.D.C. Mar. 27, 1990).

Here, the plaintiff asserts that defendants Hoffmann–LaRoche and Ice Miller "are found, have an agent, and/or transact their affairs" in the District of Columbia, thereby meeting the requirements of Section 1965(a). Compl. at 1–2; Pl.'s Mem. at 2. She then invokes Section 1965(b) to argue that given the facts in her complaint, the ends of justice merit extension of venue to the Commission defendants.[7] *Id.*

At this stage of the proceedings, however, this logical leap is far from clear. First, the plaintiff provides no factual support for her allegation that Hoffmann–LaRoche or Ice Miller "are found, have an agent, and/or transact their affairs" in the District of Columbia. *See generally id.* Second, even if the plaintiff could establish Section 1965(a) venue here for either Hoffmann–LaRoche or Ice Miller, it is by no means certain that the ends of justice would require venue over the Commission defendants. As the plaintiff herself points out, all of the Commission defendants are located in Indiana. Pl.'s Mot. for T.R.O. ¶ 18; *see also* Defs.' Mot. to Dismiss at 5. Moreover, alternative fora—namely, the United States District Courts for the Northern and Southern Districts of Indiana—are available to the plaintiff. Defs.' Mot. to Dismiss at 5. Both considerations weigh heavily in a court's assessment of what "the ends of justice require." *E.g., Wood v. Barnette, Inc.*, 648 F.Supp. 936, 939–40 (E.D.Va.1986); *Welch Foods, Inc. v. Packer*, 1994 WL 665399, at *4 (W.D.N.Y. Nov. 22, 1994); *Sadighi v. Daghighfekr*, 36 F.Supp.2d 267, 277 (D.S.C. 1999). As a result, the assertion that venue for the Commission defendants is proper in the District of Columbia seems dubious at best.

For this reason,[8] the court concludes that the plaintiff does not enjoy a substantial likelihood of success on the merits of

---

7. The plaintiff continues by citing to the venerable case of *Burger King v. Rudzewicz* to support the Commission defendants "being haled into court outside Indiana in accord with 18 U.S.C. § 1965(a) and (b)." Pl.'s Mem. at 2 (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). But *Burger King* does not address venue; it focuses instead on the exercise of personal jurisdiction over non-residents. *See generally Burger King*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528. Some circuits, however, read Section 1965(b) to authorize the exercise of personal jurisdiction over RICO defendants. *PT United Can Co. Ltd. v. Crown Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir.1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir.1987). Therefore, the court assumes that the plaintiff cites to *Burger King* in support of her assertion that this court has personal jurisdiction over the Commission defendants under Section 1965(b). Because the court's discussion focuses solely on venue, the court does not consider this or other arguments on personal jurisdiction.

8. The court notes that even if the plaintiff were able to establish venue conclusively, the other arguments raised by the Commission defendants are credible and would pose additional hurdles to the plaintiff's motions for interim injunctive relief.

her claim. *Mova Pharm. Corp.,* 140 F.3d at 1066. Because a preliminary injunction may issue only upon a showing of all four injunction factors, the court's analysis ends here, without consideration of the other three factors. *Howard v. Evans,* 193 F.Supp.2d 221, 228 (D.D.C.2002) (citing *Mova Pharm. Corp.,* 140 F.3d at 1066; *CityFed Fin. Corp.,* 58 F.3d at 746; and *World Duty Free Americas, Inc.,* 94 F.Supp.2d at 64). Accordingly, the court denies the plaintiff's motions for a temporary restraining order and a preliminary injunction.

## IV. CONCLUSION

For the foregoing reasons, the court denies the plaintiff's motions for a temporary restraining order and for a preliminary injunction. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 20th day of November, 2002.